ELLIS MISCHER, ALIAS BLACK BIRD, v. THE STATE.

No. 2035.  Decided November 8, 1899.

**1. Rape—Venue—Constitutional Law.**

The Act of June 18, 1897 (Special Session Twenty-fifth Legislature, page 16), providing that prosecutions for rape may be commenced and carried on in the county in which the offense was committed, or in any county of the judicial district in which the offense was committed, or in any county of the judicial district the judge of which resides nearest to the county seat of the county in which the offense is committed, etc., is constitutional.  There is no provision of our State Constitution prohibiting the Legislature from authorizing a prosecution for an offense committed in this State in some county other than the county where the offense was committed.

**2. Same—State Constitution.**

Article 3, section 45, of our State Constitution, which vests in the courts the power to change the venue in civil and criminal cases, and section 56, which prohibits the Legislature from passing any local or special law authorizing such change of venue, do not prohibit the enactment of a law authorizing the prosecution of an offense in another county than that in which said offense was committed, as is provided in cases of rape by the Act of June 18, 1897.

**3. Same—Constitution of United States.**

Said Act of June 18, 1897, is not in derogation of the sixth amendment of the Constitution of the United States requiring that criminal prosecutions shall be tried in the district wherein the crime shall have been committed, because that provision is a limitation and restriction which applies only to Federal procedure, and is not binding with reference to procedure in the State courts.

**4. Rape—Indictment—Allegation of Venue of Offense.**

In an indictment for rape committed in another county, it is proper practice to allege that it was presented by the grand jury of the county where the prosecution was instituted, and to allege that the offense was committed in the county where actually committed.

**5. Same—Indictment—Judicial Knowledge.**

It is not necessary in an indictment for rape, brought in a county other than that in which the offense was committed, to allege that the county of the prosecution is in the same judicial district, since this is a matter of judicial knowledge.

**6. Rape—Evidence Sufficient.**

See facts held by the court amply sufficient to support a verdict and conviction for rape, inflicting the death penalty as a punishment.

APPEAL from the District Court of Guadalupe.  Tried below before Hon. M. KENNON.

Appeal from a conviction for rape; penalty, death.

The indictment, which was presented by the grand jurors of Guadalupe County, charged appellant with rape committed upon Rosa Macha, in Colorado County, on the 13th day of April, 1899.

Counsel for defendant filed the following motion to quash the indictment, viz:

"1.  The session act of the special session of the Legislature of the State of Texas, passed at the first called session of the Twenty-fifth Legislature, under which this court assumes jurisdiction in this cause, is in flagrant violation of the constitutions of both the United States and the State of Texas; in this, that said law, in attempting to confer original jurisdiction on this court, also attempts to confer original jurisdiction upon the district court of every county in the

district the judge of which resides nearest the county seat of the county in which the offense is committed, thereby constituting a new district, which said new district is other than that in which the offense was committed, and which said new district should have been previously ascertained by law.

"2. Article 6 of the amendments of the Constitution of the United States expressly provides, that in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law; hence, the special act of the Legislature above referred to, in attempting to confer original jurisdiction upon all of the counties of two separate and distinct judicial districts, is a nullity and of no force or effect.

"3. That the said act of the special session of the Legislature above referred to is in violation of the express provisions of the Constitution of the State of Texas, in this, that section 45 of article 3 of the Constitution of the State of Texas, imposing limitation upon Legislative enactment, reads as follows: 'The power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided by law; and the Legislature shall pass laws for that purpose.' And section 56, article 3, of the Constitution of the State of Texas, provides that the Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing changing the venue in civil or criminal cases. That said special act of the Legislature in changing the venue from Colorado County, where the offense is alleged to have been committed, to the district court of every county in this judicial district, as well as to the district court of every county in the judicial district the judge of which resides nearest to the county seat of the county in which the offense was committed, was without constitutional warranty and in usurpation of the authority expressly conferred by the Constitution upon the courts of this State.

"4. It does not appear from the indictment in this cause that it is the act of the grand jury of the proper county, since no grand jury except that of Colorado County could be a grand jury of the proper county, from the allegations in the indictment, as it appears on the face of said indictment that the same was presented by, and is the act of, the grand jury of Guadalupe County, for an offense committed in Colorado County, without setting out, or attempting to show by what authority the grand jury presents an indictment for an offense committed in Colorado County.

"5. The indictment is defective in that it fails to show that the place where the offense was committed is within the jurisdiction of the court in which the indictment was presented, in that it appears from said indictment that the offense was committed in the county of Colorado, and beyond the limits of Guadalupe County; and it also appears from said indictment that it was returned into the District

Court of Guadalupe County by a grand jury of said Guadalupe County, the same not being the county in which the offense is alleged to have been committed.

"6. The indictment is defective in that the offense charged appears therefrom to have been committed in the county of Colorado, and beyond the limits of the county of Guadalupe; and said indictment fails to allege that Guadalupe County is a county of the judicial district in which the offense was committed; and further fails to allege that said Guadalupe is a county of the judicial district the judge of which resides nearest the county seat of the county, to wit, Colorado County, in which the offense is alleged to have been committed; and said indictment fails to allege that the judicial district, in which the offense was committed comprises only one county, or that Guadalupe County is an adjoining county to said Colorado County, in which, in said indictment, the offense is alleged to have been committed.

"7. Said indictment shows on its face that the court trying this cause, to wit, the District Court of Guadalupe County, has no jurisdiction thereof."

(Signed) T. L. Johnston and T. M. Humphreys, attorneys for Ellis Mischer, alias Black Bird.

The important facts proved are shown by the following testimony, viz:

Rosa Macha, being duly sworn for the State, says: "My name is Rosa Macha. I will be 16 years old my next birthday. My father and mother are dead. I live with my sister in Colorado County, Texas, on south side and near the railroad track, about three miles east from the town of Weimer. I know the defendant, Mischer, alias Black Bird, and see him in court. On the 13th day of April, 1899, I left home and went to Weimer; walked along and on the railroad track; got to Weimer about 12 o'clock to study my catechism preparatory to be confirmed in the church. Don't know how long I remained in Weimer. I left Weimer some time in the evening going home, walking on the railroad track, and after I had gone about two miles, or maybe more, I noticed coming, meeting me, a negro man. I first noticed him when he was about 100 yards from me. I was going east and he was traveling west. Just as we met, and as he was in the act of passing me, he turned and grabbed me and tried to throw me down, and pulled up my clothes and put his hands on my privates. He then picked up a large rock and struck me on the arm several times. I continued to resent until he struck me on the head with the rock, at which time I fell to the ground and was unconscious from then until I was picked up by Mr. Joe Matzke and carried home. I know some man had sexual intercourse with me upon that occasion. After I became conscious my privates were sore and pained me very much; my privates were penetrated. I was not conscious at the time, therefore don't know positively that defendant did it, but do know he was the man that assaulted me

and did not see anyone else there at the time. The defendant was dressed in dark clothes and had on a striped gray cap. The next time I saw defendant was at my home next morning; he was brought there with another negro by Sheriff Burfford. I am positive that defendant is the man that assaulted me. Never saw him before the evening he assaulted me; don't know what time of day it was; perhaps about 4 or 5 o'clock. This all occurred in Colorado County, Texas, on the day alleged in the indictment. Defendant did not have my consent to have sexual intercourse with me. I did all I could to prevent it while defendant was scuffling with me and trying to throw me down. I saw him unbutton his pants."

Dr. Ed. Walker, sworn for State, says: "I live in the town of Weimer, and am a practicing physician. Late in the evening of the 13th of April, 1889, I was called upon by Judge Hancock to go and see Rosa Macha (the girl who just testified). I saw her at her home about three miles east from Weimer; she was in bed. She had been beaten; she had eleven wounds on the head, and her skull was broken. I had to remove part of the bone. [Witness here exhibited the pieces of bones he removed.] I then made an examination of her privates and found that some man had had sexual intercourse with her; her privates were inflamed and swollen. I discovered seminal fluid in her privates, and know her privates had been penetrated by the male organ of some man. She was confined to her bed for a long time; her legs were bruised. I did not make a microscopical examination of the fluid; such examination is the only absolutely reliable test."

Two or three witnesses testified that they saw defendant going in the direction of the locality where the offense was committed, and a short time before it was committed. One of these witnesses, Joe Darst, testified that he saw him going along the railway and within 100 yards of where the crime was committed. That witness went into the house and heard some hallooing; thought it was a woman. "This was after I saw defendant."

When arrested the next morning at Eagle Lake, thirty miles east of Weimer, defendant stated to the officers that he had not been in Weimer for nearly two weeks, but during all that time had been in Eagle Lake bottom.

No brief on file for appellant.

*Rob't A. John*, Assistant Attorney-General, for the State.—The appellant's sole contention is based upon the validity of the act of the called session of the Twenty-fifth Legislature, fixing the venue and regulating the procedure in prosecutions of rape, to be found on page 16 of said acts, which authorizes the prosecution of the offense of rape in any county of the judicial district in which the offense is committed.

Appellant contends that this act is contrary to article 6 of the

amendments to the Constitution of the United States, which reads as follows: "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

This article in the Federal Constitution was made to limit, control, and regulate criminal prosecutions in the Federal courts, and has absolutely no reference and no effect whatsoever upon the criminal procedure of a State. The procedure of a State being one of the functions of local self-government and State sovereignty, it can not be controlled by Federal enactment. It is therefore submitted that the act of the Federal Constitution has nothing whatsoever to do with the procedure of State law fixing the venue of prosecutions of offenses in State courts in violation of State laws. This has been explicitly decided by our court: Cox v. State, 8 Texas Crim. App., 284, citing Twitchell v. Commonwealth, Sup. Ct. U. S.; Baron v. City of Baltimore, 7 Pet., 243; Box v. Ohio, 5 Ohio, 434; Gut v. State, 9 Wall., 35.

This view is also taken by Mr. Bishop in his Criminal Procedure, wherein he discusses the provision of the Federal Constitution above quoted, in which he says, that it is applicable only to the general government. See 1 Bish. Crim. Proc., secs. 64, 65, citing United States v. Britton, 2 Mason, 464, to sustain that proposition; and see 1 Bish., sec. 891, and authorities cited, note 8.

If, however, it be conceded that this provision of the Federal Constitution applies to the prosecution of offenses in State courts, then the State insists that the word "district" does not of necessity apply solely to counties, but of necessity refers to Federal prosecutions in Federal districts, which may be composed of many counties. Or in other words, that the district applies to a Federal district, and would authorize the prosecution of criminal offenses in any judicial district where the offense occurred, provided, as stated by that provision of the Federal Constitution, that the district "had been previously ascertained by law." By a reference to Sayles' Civil Statutes, art. —, sec. —, it will be seen that the judicial district in which appellant was tried embraced both the counties of Guadalupe and Colorado, and had been previously by legislative enactment fixed and ascertained, and therefore, even if it should be admitted that the Federal Constitution applies, the appellant in this particular case would be prosecuted in a judicial district previously fixed and ascertained by law; and therefore that provision of the Federal Constitution would only apply to such prosecutions under the act of the State Legislature which attempts to fix a venue in the county of the judicial district, "the judge of which resides nearest the county seat of the county where the

offense was committed," which does not apply in any particular to the case at bar. It will therefore be seen that appellant's contention that the law is void fixing the venue of rape cases, depends entirely upon the State Constitution.

There are but two provisions in the State Constitution that refer to or affect the venue of cases, and these are:

1. Section 45, article 3, which reads as follows: "The power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided by law, and the Legislature shall pass laws for that purpose."

2. Section 56, article 3, which reads as follows: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing changing the venue in civil or criminal cases."

It will therefore be seen by the above enactments that the same constitutional limitation which affects criminal cases also effect and control civil cases.

In reference to the common law, which controls in the absence of constitutional or legislative enactment, there was no such thing as a change of venue. See — Am. and Eng. Enc. of Law, p. —. And the above authority, also in volume 4, page 377, states: "That the legislative power to pass laws regulating the change of venue is limited by constitutional provisions respecting the subject, and while under general powers the Legislature may confer rights to a change for recognized causes on designated tribunals, or specify the manner in which the right to change shall be ascertained, it can not authorize changes in a case not contemplated by constitutional provision." It is therefore well settled from that authority, and from the cases cited to sustain the text, that the Legislature has the power to make any law in reference to the change of venue of cases, unless their power is restricted by constitutional enactments.

The right to pass laws regulating the change of venue of civil as well as criminal cases has been upheld by numerous authorities in this State. In reference to criminal cases, see Ex Parte Cox, 12 Texas Crim. App., 665; Cox and Ryan v. State, 8 Texas Crim. App., 285, and authorities cited in said cases.

Upon the contention that the constitutional enactment is the same in reference to criminal as civil cases, the State submits that the right of the Legislature to fix the venue is well settled, although the Constitution makes the act of changing the venue a judicial act and not a legislative act. Under the common law, venue was fixed by two things,—jurisdiction over the person, or jurisdiction over the subject matter; that is, the place where the act to be investigated was committed, or the domicile where the actor lived. As a general rule in civil cases the domicile of the actor fixes the venue; while in criminal cases, the place where the offense was committed fixes the same. We, however, in civil cases in the State of Texas, have many

exceptions to the rule; that is, to the rule that litigants must be sued in the county of their domicile.

In all criminal cases where the general rule is that the venue attaches in counties where the crime was committed, or in other words, that the venue is local in its nature and is against the locality where it was committed, and that that locality takes special and exclusive cognizance of the crime, we have also many exceptions, noted in our Code of Criminal Procedure.

It will therefore be seen that the Legislature has exercised the right and fixed the venue of the trial of civil and criminal cases; and the mere fact that there may be different political reasons why the venue should be different in one case than in another, is not a question for judicial inquiry. Whenever the right to so fix the venue is lodged in the Legislature is admitted, then the necessity or reason for that right becomes a legislative instead of a judicial investigation.

The two provisions of the Constitution refer exclusively to a change of venue; that is to say, after venue is fixed, and after it attaches, the Legislature under article 45 has no right by legislative enactment to enforce upon courts a divestment of venue already fixed; but jurisdiction having been vested, it can only be divested by the court itself. Section 56 refers also exclusively to change of venue, and forbids the making of a local or special law in reference to the same. Under the celebrated Ellis case, in Supreme Court of the United States, it was held that no law is local or special if it treats all similar localities alike and is general in its application to the same kinds of crimes, causes of actions, or persons. See Cox v. State, supra.

As an illustration of the right of the Legislature to arbitrarily fix the venue, the court's attention is called to the law fixing the venue in theft cases. Any county has jurisdiction to try the same, in which either the taking occurs or into which the stolen property is asported. A man therefore may steal a horse at Texline, and pass consecutively through every county in the State until he reaches the Sabine, and the fact of him having in his possession the stolen property in the different counties gives each and every one jurisdiction to try him of the offense. Therefore the common law rule which localizes offenses and requires that the same be tried where committed, can not apply in those cases, because the theft is completed as soon as the property is converted; asportation being unnecessary to the consummation of that crime. White's Penal Code, art. 860, and note with cases.

It has also been held, and made so by legislative enactment, that an offense committed within 400 yards of the boundary line of a certain county may be prosecuted in either county; and yet an offense committed 400 yards in Van Zandt County is certainly not committed in Smith County, the situs of the crime.

Now, if the contention of appellant be true, that criminal offenses being local in their nature the Legislature is not authorized to regu-

late and fix the venue in which they are to be tried, then all of these statutes, both civil and criminal, above cited, are void.

It is submitted by the State that the fixing of the jurisdiction to try criminal cases in the nature of fixing the venue of trial is vested absolutely in the Legislature, and the limitations of sections 45 and 56 of article 3 of the Constitution of this State is only a limitation of the changing of that venue, after the same has once been fixed by law; and it is submitted that the county of Colorado, which is in the same judicial district as the county of Guadalupe, had the authority and jurisdiction to try appellant for the offense committed by virtue of the venue act of the special session of the Legislature.

Appellant further contends that the indictment is insufficient because it does not allege that Colorado County is in the same judicial district as Guadalupe County. The State submits that the fact that Colorado County is in the same judicial district as Guadalupe County is a matter made so by legislative enactment; and being a law, the court takes judicial notice of the same. Counties are political subdivisions, and the courts, especially when the county is within a judicial district presided over by a particular judge, takes notice of its boundaries and geographical situation. Boston v. State, 5 Texas Crim. App., 383; 12 Am. and Eng. Enc. of Law, p. 169.

The indictment being sufficient and the facts ample, it is respectfully submitted that this case should be affirmed.

HENDERSON, JUDGE.—Appellant was convicted of rape, and his punishment assessed at death; hence this appeal.

Appellant made a motion to quash the indictment, which was overruled by the court, and he reserved his bill of exception. The indictment was in the usual form, charging that appellant committed the rape, in the county of Colorado, on one Rosa Macha, by force and without her consent. The same was presented by a grand jury of Guadalupe County, and the question raised is as to the authority of the Legislature to enact the Act of June 18, 1897 (see Acts Special Session, page 16), with reference to fixing the venue in certain counties in cases of rape. We quote from that portion of the act as follows: "Prosecutions for rape may be commenced and carried on in the county in which the offense is committed, or in any county of the judicial district in which the offense is committed, or in any county of the judicial district the judge of which resides nearest the county seat of the county in which the offense is committed. When the judicial district comprises only one county, prosecutions may be commenced and carried on in that county, if the offense be committed there, or in any adjoining county." Appellant's motion calls in question the validity of said act of the Legislature, as being in contravention of the Constitution of the United States, and cites article 6 of the amendments to the Federal Constitution, as follows: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public

trial by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law," etc. He also urges that said act of the Legislature is in violation of section 45 of article 3 of the Constitution of the State of Texas. We quote that portion thereof, as follows: "The power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided by law, and the Legislature shall pass laws for that purpose." And also section 56, which provides: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing * * * changing the venue in civil or criminal cases." He further insists that the indictment is defective, in that it fails to show that the place where the offense was committed is within the jurisdiction of the court in which the indictment was presented, in that it appears from said indictment that the offense was committed in the county of Colorado, and beyond the limits of Guadalupe County, and it also appears from said indictment that it was returned into the District Court of Guadalupe County, by a grand jury of said Guadalupe County; the same not being the county in which the offense is alleged to have been committed. The able counsel who represented appellant in the court below by appointment does not appear to have followed the case with a brief into this court, which is much to be regretted, inasmuch as the questions presented in the motion in the court below are important, and the Assistant Attorney-General has presented the State's side of the motion in a very exhaustive brief.

With reference to the first proposition of appellant, to the effect that the act of the Legislature of the State of Texas authorizing the prosecution of the offense of rape in some county other than the one where the offense was committed, or in some county of the district, is void, because violative of the Constitution of the United States, we would say that this is not a new question, the same having long since been settled by judicial decisions, both of the Supreme Court of the United States and by various State courts, in opposition to the contention of appellant; it being universally held that the article of the Constitution cited has reference exclusively to the jurisdiction appertaining to the Federal judiciary. We can no better express the view taken on this subject than by quoting from the opinion of Chief Justice Marshall in Barron's case, 7 Peters, 243, as follows: "The Constitution was ordained and established by the people of the United States for themselves for their own government, and not for the government of the individual States. Each State established a Constitution for itself, and in that Constitution provided such limitations and restrictions on the powers of its particular government as its judgment dictated. The people of the United States framed such a government for the United States as they supposed best adapted to their Constitution, and best calculated to promote their interests. The powers they conferred on this government were to be exercised by itself, and the

limitations of power, if expressed in general terms, are naturally, and we think necessarily, applicable to the government created by the instrument. They are limitations of power granted in the instrument itself, not of distinct governments framed by different persons and for different purposes." The language here used was with reference to the fifth amendment, but it is equally applicable to all of the first eight amendments to the Constitution of the United States. Barron v. City of Baltimore, 7 Pet., 243; Twitchell v. Com., 7 Wall., 321; Gut v. State, 9 Wall., 35; Eilenbecker v. District Court, 134 U. S., 31, 10 Sup. Ct., 424; Fox v. Ohio, 5 How., 434; Colt v. Eves, 12 Conn., 243; State v. Wells, 46 Iowa, 662. Nor do we find any provision in our State Constitution prohibiting the Legislature from authorizing a prosecution for an offense committed in this State in some county other than the county where the offense was committed. There is nothing in the sections of our Constitution referred to by appellant that would limit the Legislature in this matter. Section 45 simply vests power in the courts to change the venue, and section 56 prohibits the Legislature from passing any law changing the venue in civil or criminal cases by any local or special law. We do not understand these clauses with reference to giving the Legislature authority to pass laws authorizing the courts to change the venue to create a limitation on the Legislature with reference to fixing the venue in criminal cases originally. On the contrary, these clauses would appear to apprehend a power in the Legislature to fix venue in cases in the first instance. After they are once fixed, the venue can then only be changed through the courts, by a procedure authorized by the Legislature. If we look to other sections of our organic law, we do not find any prohibition or limitation on the Legislature in regard to the venue of criminal cases. Section 10, article 1, provides that "in all criminal prosecutions the accused shall have a speedy public trial by an impartial jury. * * * And no person shall be held to answer for a criminal offense, unless on indictment of a grand jury, except in cases in which the punishment is by fine, or imprisonment otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army or navy, or in the militia, when in actual service in time of war or public danger." Section 15 provides: "The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency." Section 19 provides: "No citizen of this State shall be deprived of life, liberty, property, privileges, or immunities, or in any manner disfranchised, except by the due course of the law of the land. All of these articles are limitations on the power of either the courts or the judiciary. If it could be shown, under section 10, that an indictment by a grand jury meant only a grand jury of the county where the offense was committed, then to deprive a defendant of that right (that is, to authorize him to be indicted by the grand jury in some other county) would not be due course of law. But we seek in vain in the Constitution or

elsewhere for such a limitation. In England, where the grand jury system had its birth, a grand jury was drawn from the vicinage where the offense was committed. Indeed, as originally constituted, the jury that tried an offender was composed of the witnesses against him. But, if it be conceded that such was the rule at common law, we only have the common law in force here by adoption, and in the absence of statutory enactment, if we have no constitutional inhibition, our statutes must control in this matter as in every other; and there being no constitutional inhibition, as we have seen, the legislative declaration on this subject is the supreme law. Moreover, the question in this State seems to have been settled long since against the contention of appellant. Ham v. State, 4 Texas Crim. App., 645; Cox v. State, 8 Texas Crim. App., 284. And such seems to be the view entertained by all the authorities, in the absence of some constitutional provision requiring the prosecution to be in the county where the offense was committed, or in some county of the district. 1 Bish. Crim. Proc., secs. 381, 382. In our State the Legislature has exercised the authority for a number of years to fix the venue of cases in counties other than the county where the offense was committed. Code Crim. Proc., arts. 224-246, inclusive. This authority has been unquestioned in a number of cases. For instance, the offense of forgery, it has been held, may be prosecuted in any county where the written instrument was forged, or where the same was used or passed, or attempted to be used or passed. Mason v. State, 32 Texas Crim. Rep., 95; Strang v. State, 32 Texas Crim. Rep., 228; Thulemeyer v. State, 34 Texas Crim. Rep., 619. So, in embezzlement, it has been held that the offense may be prosecuted in the county where the embezzlement took place, or in any county into which the offender may have taken or received the property, or through or into which he may have undertaken to transport it. Cohen v. State, 20 Texas Crim. App., 224. So, where property is stolen in one county and carried into another, the prosecution may be commenced in either. Cox v. State, 41 Texas, 1; Connell v. State, 2 Texas Crim. App., 422; Cameron v. State, 9 Texas Crim. App., 332; Roth v. State, 10 Texas Crim. App., 27; Shubert v. State, 20 Texas Crim. App., 320. And other cases under other statutes might be cited. Furthermore, in our opinion, it was properly alleged in the indictment, which was found and presented by a grand jury of Guadalupe County, that the offense was committed in Colorado County. In Chivarrio v. State, 15 Texas Criminal Appeals, 330, this question was decided. That was a case where the offense was committed in Encinal County, which was an unorganized county, and by legislative enactment was attached to Webb County for judicial purposes. There it was held that the place of the offense was improperly laid in Webb County; that it should have been laid in Encinal County, where it actually occurred. This view was taken because it was not provided that the venue in unorganized counties could be laid, under article 245, Code of Criminal Procedure, in the

county where the prosecution was carried on. That case has a direct application to the case at bar, as the act of the Legislature under which this prosecution was begun does not provide that the indictment may allege that the offense was committed in the county where the prosecution was carried on. As to whether Guadalupe County has jurisdiction of this offense, as being in the judicial district in which Colorado County is situated, where 'the offense was committed,—it was not necessary to make this averment in the indictment, as the court will take judicial cognizance that it is within the same judicial district with Colorado County, where the offense was alleged to have been committed. Boston v. State, 5 Texas Crim. App., 383; 1 Bish. Crim. Proc., sec. 383, subdiv. 2.

Appellant excepted to that portion of the charge of the court which instructed the jury with reference to the defendant's failure to testify. The charge was in accordance with the statute, and was not objectionable. The charge on circumstantial evidence was given in this case, but we presume it was given out of abundant caution, and with the view of extending to appellant all possible benefits of the law to which he might be entitled. In the view we take of it, such a charge, though appellant was not entitled to it, does not suggest a cause of complaint on his part.

We have examined the record carefully, and in our judgment the facts amply sustain the finding of the jury. The defendant was identified by both positive and circumstantial evidence as the perpetrator of the offense. He met his victim on the railroad, as she was returning from Weimer to her home, situated two or three miles from said place; and in order to accomplish his purpose he assaulted and beat her (she being only a 16-year-old girl) into a state of insensibility, then perpetrated the crime, and left her in an unconscious state on the railroad track. Her injuries were of a very serious character, her skull being fractured and her life imperiled. Under the circumstances of this case, we think the jury very properly inflicted the highest penalty known to the law, and the judgment is affirmed.

*Affirmed.*