## DUREE et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 1, 1924. Rehearing Denied May 12, 1924.)

No. 6261.

1. **Criminal law ⬡304(6)—Judicial notice taken of location of town.**

The court will take judicial notice of the. fact that Edmond and a point three miles south thereof is in the Western district of Oklahoma.

2. **Criminal law ⬡438—Photographs of finger prints on bottle held admissible.**

The photograph of finger prints on a bottle, and an enlargement of such photograph, were admissible, where it appeared that the part of the bottle containing the finger prints had disappeared and could not be produced.

3. **Post office ⬡49—Evidence held sufficient to sustain a conviction of assault to purloin mail matter.**

In a prosecution for violation of Criminal Code, § 197 (Comp. St. § 10367), for assault with intent to rob, steal, or purloin mail matter, evidence *held* to sustain a conviction, though defendants at the time of the robbery wore masks.

4. **Criminal law ⬡1128(4)—Reviewing court cannot consider matter not in record.**

If the government has evidence showing innocence of persons convicted and appealing to the Circuit Court of Appeals, it is its duty to present it to the pardoning power, and not to the reviewing court, which is confined to the record as made at the trial.

In Error to the District Court of the United States for the Western District of Oklahoma.

Jeff Duree and others were convicted of assault with intent to rob, steal, or purloin mail matter, and they bring error. Affirmed.

Edward Crossland, of Tulsa, Okl., and Frans E. Lindquist, of Kansas City, Mo. (George W. Carry, of Guthrie, Okl., on the brief), for plaintiffs in error.

W. A. Maurer, U S. Atty., and J. W. Scothorn, Asst. U. S. Atty., both of Oklahoma City, Okl.

Before KENYON, Circuit Judge, and TRIEBER and MUNGER, District Judges.

KENYON, Circuit Judge. Plaintiffs in error, who will be referred to for convenience as defendants, were convicted in the District Court of the Western District of Oklahoma for violation of section 197 of the Criminal Code (section 10367, Compiled Statutes), which section is as follows:

"Whoever shall assault any person having lawful charge, control, or custody of any mail matter, with intent to rob, steal, or purloin such mail matter or any part thereof, or shall rob any such person of such mail or any part thereof, shall, for a first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery, he shall wound the person having custody of the mail, or put his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned twenty-five years."

⬡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Dick Roach, also under indictment, was acquitted by the jury.

On the night of September 28, 1921, near Edmond, in the state of Oklahoma, certain masked parties held up a train of the Atchison, Topeka & Santa Fé Railroad Company, threatened and terrified the mail clerks, and robbed the mail car. There is no question of the robbery, with all the concomitants of guns, threats, bulldozing, masks, hands up, blowing open mail car with nitroglycerine, etc. incidental to a "hold-up" of a mail train. The government contends that defendants were the parties perpetrating the crime. Defendants claim they were far from the scene at the time.

A number of assignments of error are presented. Few of them specify clearly the errors relied on. Some find no support in the record. However, the important questions raised can fairly be grouped under three heads: (1) The claim that the indictment does not charge the alleged offense to have been committed in the Western district of Oklahoma; (2) that certain exhibits in the way of photographs were improperly admitted in evidence; and (3) that the evidence was not sufficient to sustain the verdict.

[1] First, as to the indictment. There are assignments that the indictment is vague, indefinite, uncertain, and does not properly set out any offense against the government. The indictment sufficiently charged an offense under section 197, Federal Criminal Code. As to the objection that the indictment does not charge the alleged offense to have been committed in the Western district of Oklahoma, it is sufficient to say that it states the acts occurred "while the said train was at a point on the line of said railroad company about three miles south of Edmond in the state of Oklahoma." The court will take judicial notice of the fact that Edmond is in the Western district of Oklahoma. Goldstein v. United States, 256 Fed. 813, 168 C. C. A. 159; Hoyt v. Russell, 117 U. S. 401, 6 Sup. Ct. 881, 29 L. Ed. 914; Acton v. State, 80 Md. 547, 31 Atl. 419; Commonwealth v. The Inhabitants of Springfield, 7 Mass. 9; Mischer v. State, 41 Tex. Cr. R. 212, 53 S. W. 627, 96 Am. St. Rep. 780.

[2] Second. Certain exhibits, being photographs of a bottle or piece thereof, were received in evidence against the objections of defendants. A few days after the train robbery, and near the place of its occurrence, Inspector Johnson found a certain bottle, which the government claimed had contained nitroglycerine or other explosive, and had been used by some member of the gang to blow open the mail car. It was claimed there were finger marks thereon. The bottle was turned over to Post Office Inspector Haynes by Inspector Johnson. Haynes had it photographed by one Murphy, who was with the identification department of the police force of Oklahoma city and had a camera designed for making photographs of finger prints. He made the negative, Exhibit 18, and the photograph, Exhibit 19, was made from this negative. This negative and photograph, it is claimed, show finger prints upon the bottle of defendant George Downer. The finger print record of George or Babe Downer was in evidence as Exhibit 17. Haynes took the bottle to Leavenworth penitentiary and had a photograph taken of it by one Fisher. Exhibit 22 is the photograph, being one side of the

bottle upon which the finger prints appeared. Exhibit 20 is an enlargement of Exhibits 19 and 21. The bottle, or a part of it, at least, had disappeared from Murphy's possession. Fragments of it were produced in court, and the breaking of it to better take photograph was explained by witness Mullenix, but the part photographed and claimed to show finger prints was not produced, and there was evidence that it had been taken from Murphy and could not be produced. Evidence was introduced that the photographs were correct representations of the bottle, or a part of the bottle, showing finger prints. We see no reason why, under these circumstances, the photographs were not admissible. The enlarged photograph was likewise admissible to make the proportions plainer and to assist the jury. 17 Cyc. 420; Considine v. United States, 112 Fed. 342, 50 C. C. A. 272; United States v. A Lot of Jewelry, etc. (D. C.) 59 Fed. 684; State v. Rogers, 129 Iowa, 229, 105 N. W. 455; Smith v. Territory of Oklahoma, 11 Okl. 669, 69 Pac. 805.

[3] Third. The real question apparently relied on is that the evidence was not sufficient to warrant the submission of the case to the jury or to sustain the verdict. Witness Mashore, who testified fully as to the arrangement and plan to rob the train, and implicated the defendants therein, was an accomplice. The court in its instructions to the jury told them that his testimony should be carefully and cautiously scrutinized in deciding whether to give it credence. The conviction, however, does not rest alone on the evidence of Mashore, the accomplice. The parties holding up this train wore masks, and their faces could not be seen. The train was held up, however, for 40 minutes, during which time the officers of the train, repeatedly threatened with assault by the guns of the bandits, had an opportunity to observe the bandits, and the situation was such as to impress upon them many things bearing on identification. Of course, there are difficulties attendant on the identification of men wearing masks, especially in the nighttime, who pursue the occupation of train-robbing; but witnesses here identify the different defendants from seeing them that night, and their belief and identification afterward was corroborated from seeing them in jail. These witnesses identify them by various things, such as size, weight, height, peculiarities of voice, loudness, sharpness, or softness of tone, roughness and gruffness of speech on the part of some, especially in the giving of commands to the trainmen to line up. One witness identified one of the defendants by a lisp in his voice, and afterwards, seeing him in jail, noticed that he had some teeth out, and that this caused the lisp he had observed the night of the robbery. Others were impressed with certain peculiar laughter upon the part of the bandits; others, with a certain stooping position of some. One witness noticed the high cheek bones of one of the defendants, and others noted their general carriage and appearance. The finger prints on the bottle as shown by the photographs were important, the same comparing with the recorded finger prints of Babe Downer. Most of these witnesses saw the defendants in jail and were able to identify them as those who held up the train. Defendants presented evidence of alibis. The truthfulness of the witnesses was for the jury. They could have believed, under the evidence, that none of the defendants were present the night

of the robbery, or that any particular one was not; but they had a right, also, to believe the witnesses identifying the defendants. We are satisfied that the evidence was sufficient to sustain a verdict of guilty. We find no errors in the record affecting the substantial rights of defendants.

[4] Upon motions presented to this court to reduce bail of certain defendants, statements in writing were presented, made by some government officials, that evidence existed showing that two of the defendants were not guilty. If the government has such evidence, it is its duty to present it to the pardoning power. This court is confined to the record as made in the trial, and under that record the evidence was sufficient to warrant the verdict of the jury, and the case as to all the defendants is

Affirmed.