## MURRAY v. UNITED STATES.

### FAHY v. SAME.

(Circuit Court of Appeals, Seventh Circuit. December 9, 1925. Rehearing Denied January 13, 1926.)

#### Nos. 3510, 3511.

1. **Criminal law ⟲878(4)—Verdict of guilty of robbery and of robbery with dangerous weapons is not inconsistent and repugnant.**

   Verdict of guilty of robbery of person in custody of mail and of robbery with dangerous weapons is not inconsistent and repugnant.

2. **Criminal law ⟲741(1), 742(1)—Credibility of evidence and weight to be given thereto is for jury alone.**

   Credibility of evidence and weight to be given thereto is for jury alone.

3. **Criminal law ⟲423(1)—Acts or declarations of conspirators in furtherance of conspiracy are admissible against co-conspirators.**

   Acts or declarations of conspirators in furtherance of conspiracy, while joint understanding is pending, are admissible against co-conspirators.

4. **Criminal law ⟲423(2)—Evidence of conversations between conspirators in accused's absence as to statements by one of accused held competent, and not hearsay.**

   Evidence of conversations between conspirators in accused's absence as to statements by

one of accused, made as inducement to go on with conspiracy *held* competent against accused, and not hearsay.

**5. Criminal law** ⊜⟳419, 420(2)—**Proof that certain statement was made is not "hearsay" of that fact, but is hearsay of truth of statement.**

Proof that certain statement was made is not "hearsay" of that fact, but is hearsay of truth of statement.

**6. Criminal law** ⊜⟳423(9)—**Acts and declarations of conspirators after robbery held admissible.**

Where conspiracy was to rob mail train .and to conceal fruits of robbery, conspiracy did not end after robbery, while fruits were still concealed and possessed, and subsequent acts and declarations of conspirators in furtherance of conspiracy were admissible.

**7. Conspiracy** ⊜⟳41—**Accused, participating in conspiracy to rob mail train, though not present at robbery, could be convicted of robbery with deadly weapons.**

Accused, participating in conspiracy to rob mail train, in violation of Criminal Code, §§ 37, 197 (Comp. St. §§ 10201, 10367), though not present at actual robbery, could be convicted of robbery with deadly weapons, when weapons were used by actual robbers.

**8. Witnesses** ⊜⟳337(4)—**Commission of other offenses, brought out on cross-examination of accused, testifying in their own behalf, held competent against them.**

Accused, who took stand in their own behalf, were subject to same tests as other witnesses, and commission of other offenses, brought out on cross-examination, was competent evidence against them on weight to be given their testimony, and instructions to disregard were properly denied.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

James Murray and William J. Fahy were convicted of robbing a person having custody of the mails and putting the life of the custodian in jeopardy by use of dangerous weapons, and of conspiring to commit such crimes, in violation of Criminal Code, §§ 37, 197, and they separately bring error. Affirmed.

Benedict J. Short, of Chicago, Ill., for plaintiff in error Murray.

Lee O'Neill Brown, of Ottawa, Ill., for plaintiff in error Fahy.

Edwin A. Olson, U. S. Atty., and John Elliott Byrne, Asst. U. S. Atty., both of Chicago, Ill.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. The plaintiffs in error were indicted, with seven others, for the violation of sections 197 and 37 of the Criminal Code (Comp. St. §§ 10367,

10201). All counts of the indictment charged all nine defendants as principals. The first five counts charged them with robbing a person having custody of the mails, and in effecting such robbery putting the life of the custodian in jeopardy by the use of dangerous weapons. Counts 6, 7, 8, 9, and 10 charged them with robbing the custodian of the mails, and count 11 with conspiracy to commit the several crimes set out in counts 1 to 10, inclusive. The six actual perpetrators of the robbery pleaded guilty, and three of them became witnesses for the government. One of the defendants was acquitted, and the plaintiffs in error, Murray and Fahy, were convicted on all counts, and sentenced to 25 years in the penitentiary. They sued out separate writs of error.

[1, 2] Murray assigned 198 alleged errors, covering nearly 100 pages of the printed record, and Fahy adopted Murray's assignments as his. In view of the number and volume of Murray's assignments, this short cut of Fahy is to be commended. Only 13 of all this multitude of assignments are mentioned in the briefs, and some of these are frivolous, as, for example, No. 4, that a verdict finding plaintiffs in error guilty of simple robbery and of robbery with dangerous weapons is inconsistent and repugnant. Of course the more serious crime includes the simpler one. Every person who robs with a dangerous weapon robs nevertheless. Another example is No. 5, that there is no evidence whatever to sustain the verdict against Fahy. There is abundance of evidence in the record to sustain the conviction of both plaintiffs in error, if the jury believed it. The credibility of it and the weight of it were for the jury alone to determine.

[3] The assignments of error chiefly relied upon, except those relating to the refusal of the court to give requests for instructions Nos. 2 and 6, involve an erroneous view of the law of conspiracy, and of the rules of evidence applicable to a crime committed by several persons and charged against them jointly. The joint enterprise charged in the indictment and shown by the evidence had for its object the robbery of the mails at a time and under circumstances to be determined upon. It was a general plan to rob mails going out of Chicago, when the opportunity was favorable and when the promise of reward was sufficient. The evidence shows that the defendants in this case had no moderate appetite for loot. A possible haul of $100,-000 was scorned by them. They sought to and actually did steal many times that

amount The evidence discloses, not several joint enterprises and conspiracies to rob particular shipments of mail, but one general plan and design to rob the mails at such time and place as circumstances might warrant. While the plan for a time contemplated a robbery of trucks passing through the streets of Chicago, at another time the robbery of a certain mail supposed to carry $100,000 to Indianapolis, and finally the robbery which was actually effected, it was one continuous general plan and conspiracy to effectuate the robbery which was finally committed. The crime was so charged and evidence was introduced from which the jury might find the existence of such a conspiracy and that all the defendants were members of it. When once such a conspiracy, such a joint understanding, has been established and is pending, any act done or declaration made by any party to the understanding, in furtherance of the object of it, is admissible in evidence. Tested by this rule, all the criticisms of the rulings of the court upon what is called hearsay evidence disappear.

[4] Some of the testimony of Glasscock, one of the accomplices, is much complained of in this respect and illustrates the contentions made. He was allowed to testify that at meetings wih other conspirators, in the absence of Murray and Fahy, he told his co-conspirators that, Murray had told him that he knew an inspector (Fahy) who would furnish information as to shipments of valuable mail, and further that Murray had said that Fahy had said that he would furnish this information. This evidence as to what Murray said was competent against him; therefore the court could not exclude it, as requested. The most that could have been done was to ask the court to limit its effect, and this was not done. But the evidence was competent as a declaration in furtherance of the conspiracy. The witness was detailing conversations he had with certain of his co-conspirators while making the preliminary plans for the robbery of the mails, and the statement that plaintiff in error Murray had told the witness that he knew an inspector who could, and who said he would, furnish the necessary information, was directly in furtherance of the conspiracy. It was plainly an inducement held out to the co-conspirators to go on with the enterprise. It was not hearsay in a legal sense at all.

[5] Complaint of the court's refusal to give request No. 4 is based upon this same mistaken view of the law of evidence. The asserted harm done plaintiffs in error by refusal to give it lies in the claim that it is "a correct statement of the limitations of the hearsay rule in conspiracy cases," and that "because of the remote hearsay adduced against Murray and Fahy this request was important to their defense." As already stated, the remote hearsay was not hearsay at all. It consisted in statements made by one conspirator to his co-conspirators as inducement and encouragement to go on with the contemplated crime. Such statements were therefore in furtherance of the conspiracy, and the fact that they were the quoted statements of others does not make them hearsay. Proof of the fact that a certain statement was made is not hearsay of that fact. It is hearsay of the truth of the statement. Glasscock said these things to his co-conspirators as inducement for them to go on with the enterprise, and it does not become any less inducement because it consists in stating what some one else said. A promise of assistance by another person would be the statement of that other person, and when told to co-conspirators it would be inducement to go forward with the crime.

[6] Nor are the acts and declarations of Murray and Fahy after the robbery to be excluded on the ground that they occurred after the conspiracy had come to an end. Among the offenses which the indictment charged as the objects of the conspiracy were the concealing and the possessing of the fruits of the robbery, and these crimes were going on at the time the acts were done and the declarations made. The conspiracy had not yet come to an end.

[7] It is strongly urged that as plaintiffs in error were not present at the actual robbery, and were at most shown to be accessories before the fact, they were not shown to have intended the use of dangerous weapons. This contention is disposed of by the case of Preeman v. United States, 244 F. 1, at pages 17, 18, 156 C. C. A. 429, 446, decided by this court. That was a prosecution for the use of the mails in a scheme to defraud and a conspiracy to commit such crime, and it was there held that, as the carrying out of the fraudulent scheme could not have been successfully accomplished without the use of the mails, "all who participated in the scheme contemplated the use of the mails in the execution of their common design." So here a mail train could not have been held up and the guardians of the mail robbed without the use of deadly and dangerous weapons. Such things are not done barehanded.

[8] The refusal to give requested instruc-

tions 2 and 6 is alleged as error; 2 and 6 in substance requested the court to tell the jury that it was immaterial to the issues in the case how many wrongful or illegal acts were perpetrated by defendants, except in so far as such acts were indicative of the conspiracy charged; that they were not concerned with whether or not any defendant was engaged in the illegal transportation of intoxicating liquor; and that, if they believed from the evidence that he was so engaged, they should not permit such fact to influence their verdict. Plaintiffs in error both availed themselves of their privilege and became witnesses in their own behalf. They were subject to the same tests as other witnesses, and, so viewed, it was not the law that their wrongful and illegal acts, other than the offenses charged, were immaterial and should not influence the verdict. Such facts were entirely competent to be considered upon the weight to be given to their testimony, and requests to direct the jury to disregard it altogether were properly denied.

The contention that the venue was not proved is without merit. Duree v. United States (C. C. A.) 297 F. 70; Goldstein v. United States, 256 F. 813, 168 C. C. A. 159.

There is no substantial error in the record, and the judgment is affirmed.