UNITED STATES v. A LOT OF JEWELRY, ETC.

(District Court, E. D. New York. January 9, 1894.)

1. CUSTOMS DUTIES—VIOLATION OF LAWS—FORFEITURES—REPEAL OF STATUTES.
    Rev. St. § 3082, relating to unlawful importations, is not a purely criminal statute, but, on the contrary, authorizes a suit in rem to forfeit the goods; and it was not repealed, either by the act of February 27, 1877, (Rev. St. § 2865,) or by section 9 of the act of June 10, 1890. U. S. v. A Lot of Jewelry, 13 Blatchf. 65, criticised.

2. SAME—INFORMATION—SUFFICIENCY.
    An information of forfeiture under Rev. St. § 3082, is sufficient to support a verdict when it contains averments that certain persons named received the goods, knowing them to have been imported contrary to law; that they were seized by the collector within the district; that they were subject to duty, were brought from a foreign port into the port of New York, without being invoiced or entered at the custom house, and without payment of any duty; and that they were imported contrary to law, by persons named, fraudulently and knowingly.

3. SAME—INFORMATION—CRIMINAL RULES NOT APPLICABLE.
    An information of forfeiture under Rev. St. § 3082, is capable of amendment, if objected to; and, when there is no demurrer or application for particulars before the trial, it will not, after verdict, be judged of with the strictness applicable to an indictment.

4. SAME—BURDEN OF PROOF—"PROBABLE CAUSE."
    In section 21 of the customs administrative act of 1890, which casts the burden of proof, in cases of seizure, upon the person claiming the goods, provided that probable cause for the prosecution is shown, the words "probable cause" are to be understood as importing circumstances which create suspicion. Boyd v. U. S., 6 Sup. Ct. 524, 116 U. S. 616, distinguished.

5. EVIDENCE—COMPETENCY—IDENTITY OF PERSONS—PHOTOGRAPHS.
    It is competent, for the purpose of proving the identity of a person alleged to have passed under different names in different places, to show a photograph to witnesses who knew the person passing under the names, respectively, and allow each to testify that it looked like the man he had so known.

At Law. Information of forfeiture, under Rev. St. § 3082, to secure the condemnation of certain jewelry, alleged to have been brought into the United States contrary to law. The court directed a verdict for the United States, and the cause is now heard on a motion for a new trial, and in arrest of judgment. Denied.

The information, omitting the caption, was as follows:

"On the 20th day of June, in the year 1893, comes Jesse Johnson, as the attorney of the United States of America for the eastern district of New York, in a cause of seizure and forfeiture of the property, under the revenue and customs laws of the said United States, and informing the court: That on the 5th day of May, and the 10th and 16th days of June, in the year one thousand eight hundred and ninety-three, Francis Hendricks, collector of customs for the port and collection district of New York, seized on land, in the

said eastern district of New York, certain goods, wares, and merchandise, and which said goods, wares, and merchandise, he, the said collector, has now, within the said eastern district of New York, as forfeited to the said United States for the causes propounded in the following articles. That heretofore, about February, March, or April, 1893, the goods, wares, and merchandise were brought from a foreign port and place—from France, or some other foreign country—into the port and collection district of New York, by Alexander Vollkringer, or Madame Vollkringer, or Eugene Leroux, or Jenny Leroux, alias Jenny Dolli, or by one Flamant, or Madame Flamant, or Herbert Gailarden, or by some person or persons unknown, and were found partly in the possession of Eugene Leroux, or Jenny Dolli, alias Jenny Leroux, and partly in the possession of certain other persons, with whom said Eugene Leroux, or Jenny Leroux, alias Jenny Dolli, or some person acting for them, had placed the same as security, for loans, or, as is commonly known, had pawned the same. The names of such other persons are A. H. Samuels, J. J. Freel, H. C. Lewis, F. Freel, M. Brockheimer, and Arthur J. Heaney, in the said eastern district of New York. That said goods, wares, and merchandise, so found in the possession of the persons last above named, were subject to duty, and which were not, at the time of making entry for such goods, wares, and merchandise, by the person or persons having possession thereof, mentioned to the said collector of the port and collection district of New York, before whom such entry should have been made, and which said goods, wares, and merchandise were then and there subject to duty, and should have been invoiced, but that no duty was paid thereon, contrary to the provisions of the statutes of the United States in such case made and provided. That said Vollkringer, Madame Vollkringer, Leroux, Jenny Leroux, alias Jenny Dolli, Gailarden, Flamant, and Madame Flamant did fraudulently and knowingly import or bring into the United States the said goods, wares, and merchandise, or did assist in so doing, and did receive, conceal, buy, sell, and pawn, the same after importation, knowing the same to have been imported contrary to law. And the said attorney of the United States saith that all and singular the premises are true, and that by reason thereof, and by power of the statutes in such case made and provided, the aforesaid goods, wares, and merchandise became and are forfeited to the use of the said United States, as in the statutes provided."

Jesse Johnson, U. S. Atty.

M. L. Towns, (R. Moses and J. J. Allen, of counsel,) for claimants.

BENEDICT, District Judge. This is a proceeding in rem to procure the condemnation of a quantity of jewelry alleged to have been forfeited to the United States. The value of the jewelry proceeded against is about $12,000. A full description of it is given in the information. A claim and answer having been filed, the case came to trial before the court and a jury. At the close of the testimony introduced by the government, no testimony being offered by the claimants, a verdict for the government was directed by the court. The cause now comes up upon a motion for a new trial, and a motion for an arrest of judgment, these motions having been heard together.

It will be convenient to consider first the point made that section 3082 of the Revised Statutes, which was the statute upon which the trial proceeded, was repealed by section 9 of the act of June 10, 1890. Such is not my opinion. The language of section 9 of the act of 1890 shows, as it seems to me, that it was intended to relate to acts done in connection with an entry of goods at the custom house, not to a case where no attempt is made to enter the goods, or otherwise to comply with the laws respecting the col-

lection of duties. The words "any false or fraudulent practice and appliance," as used in section 9 of the act of 1890, must be taken to be limited to the case mentioned in the section, not to a case where no entry at the custom house is made or attempted.

In a supplemental brief, submitted on behalf of the claimants, the further point is taken that section 3082 was repealed by the act of February 27, 1877, an act passed three years after the Revised Statutes took effect, but which now appears in the Revised Statutes in section 2865. I am unable to see how the provision in section 3082, which declares a forfeiture of goods imported contrary to law, can be affected by section 2865, which is a purely criminal statute, and in no way deals with goods unlawfully imported, but only with the person of the offender. There is no inconsistency between the two provisions, and no language is used in section 2865 indicating an intention to repeal or modify the provision for forfeiture contained in section 3082.

Again, it is contended that section 3082 is a purely criminal provision, and no action in rem to procure a judgment of forfeiture of goods can be maintained by virtue of it. In support of this point is cited the case of U. S. v. A Lot of Jewelry, 13 Blatchf. 65, where Mr. Justice Hunt remarks, in regard to section 3082:

"The object and intent of the proceeding is the imposition of the fine and the imprisonment, not the recovery of the goods. The statement that goods so imported shall be forfeited is incidental to the main point, the imposition of the fine and imprisonment. It is by virtue of sections 3059, 3061, 3072, and other sections, that goods are seized when imported in violation of law, and the authority of section 3082 is not needed for that purpose."

This remark furnishes no binding authority in this case. The only question up for decision was a question of evidence. The remark above quoted was not necessary to the determination of the case, nor is it easy to see how a forfeiture of goods, which is plainly declared, by express terms in section 3082, can be enforced as incidental to a criminal prosecution. No attempt to do that has ever come to my knowledge, and it seems to me that the introduction of the civil proceeding to forfeit goods into a trial upon an indictment would be, if not wholly impracticable, at least productive of great confusion. It would seem that there must be some mistake in the report of the opinion of Mr. Justice Hunt, for sections 3059, 3061, and 3072, to which reference is made as entailing forfeiture of smuggled goods, are not, as I read them, sufficient for that purpose. To give to section 3082 the effect now claimed in this case would be to nullify express and important language in the statute, and without apparent reason. The decision of the supreme court of the United States, in U. S. v. Claflin, 97 U. S. 546, which is also cited by the defense in this connection, simply decides that an action of debt will not lie under section 3082. The case at bar is not an action of debt. In deciding that case, however, it is stated by the supreme court (page 551) that the act of 1866, which is section 3082, imposes a forfeiture of the goods. And in Friedenstein v. U. S., 125 U. S. 224, 8 Sup. Ct. 838, although one count of the information was based on section 3082, nothing is said by the court

to cast doubt upon the validity of that section. In the case of Cotzhausen v. Nazro, 107 U. S. 219, 2 Sup. Ct. 503, the seizure there in question was held lawful, upon the ground that the article, being dutiable, and having been imported in a letter, had been imported contrary to law, and, therefore, was forfeited under section 3082 of the Revised Statutes. A consideration of the various statutes anterior to the act of 1866, now section 3082, leads to no different conclusion. The suggestion, that the words "shall be forfeited" were introduced into section 3082 merely to emphasize the fact that such was already law, seems without force. The better suggestion would seem to be that the words were introduced because instances had been found of goods imported contrary to law, which could not be forfeited by virtue of the prior statutes. "Goods imported in a United States vessel and not included in the manifest," (sections 2809, 2810;) "goods unladen within four leagues of the coast," (section 2799;) "articles in baggage and not reported to the collector," (sections 2872, 2874;) "goods unladen without a permit," (sections 2872, 2874;) "goods found concealed in any dwelling house or other similar place," (section 3066;) "goods brought from any foreign country adjacent to the United States," (sections 3098, 3099,)—are declared forfeited. But I have been referred to no statute, other than section 3082, which declares a forfeiture of goods brought into the United States as the goods proceeded against here are shown to have been.

My conclusion, therefore, is that so much of section 3082 as declares a forfeiture of goods imported contrary to law is a subsisting statute, under which the goods in question can be lawfully condemned as forfeited to the United States.

It is said that the information will not support a verdict, because it contains no averment that the goods were imported contrary to law. The information is not scientifically constructed, but, treating it according to the contention of the claimants, as consisting of a single count, it contains an averment that certain persons named did receive the goods described, knowing the same to have been imported contrary to law. This averment, by necessary implication, avers that the goods were imported contrary to law. The information also avers a seizure of the goods by the collector, within the district; that these goods were subject to duty; that they were brought from a foreign port into the port of New York, without being invoiced or entered at the custom house, without the payment of any duty whatever; and that the goods were so imported contrary to law into the United States by persons named, fraudulently and knowingly. These averments are, as it seems to me, sufficient to support a judgment of forfeiture by virtue of section 3082, and to be sufficiently particular to meet the requirements of the law in a case of this description.

At this point, while examining the language of the information, may be considered the point made that the information confines the proceeding to goods which had been pawned, and that there must be a new trial, inasmuch as the evidence fails to show what part of the goods had been pawned. But whether the goods had been

pawned or not is immaterial. A pawning of the goods is not necessary to entail the forfeiture declared in section 3082, and need not be proved. Nor need any intention to defraud be averred or proved, in a proceeding to condemn goods under this section. Cotzhausen v. Nazro, above cited.

Again, it is said that the information, as drawn, confines the proceeding to goods found in the possession of six pawnbrokers, named in the information, and, inasmuch as the testimony fails to show what goods were so found, there must be a new trial. I cannot agree with this view of the information. It seems to me that it would be an unreasonable construction of the information to hold that the words "last above named" refer to six persons whose names preceded these words, and did not include the other persons, who were also previously named as having the goods, or some part of them, in their possession.

Some other objections have been made to the information, but it seems sufficient to observe, in regard to them all, that this is not a trial upon an indictment, but upon an information, capable of amendment, if objected to. The information was not demurred to, nor was any application for particulars made before the trial; no doubt for the reason that no additional information was required. At the trial particularization of the statutes relied on was asked and given. Two of the statutes so named were rejected by the court, and the case confined by the ruling to section 3082. The fact that no objection to the information was raised, either by demurrer, or by motion for particulars, or otherwise, until after a jury had been sworn to try the issues raised by the pleadings, points to a belief on the part of the claimants that no amendment of the pleadings was required to protect their rights. I am unwilling to import into a suit of this character rules of criminal law, which are so often successfully resorted to, after a jury has been sworn, for the purpose of defeating the ends of justice.

During the trial it became important for the government to show that a man named Vollkringer, who had a stock of jewelry in a store in Paris, of which the jewelry proceeded against is shown to have been a part, came to New York, as a passenger, by the steamship New York, under the name of Flamant. In order to prove this, a witness who knew Vollkringer in Paris was shown a photograph of a man, and he testified that Vollkringer's appearance corresponded with the picture in the photograph. Another witness, who had known the man called Flamant at the hotel in New York, on being shown the same photograph, testified that Flamant's appearance corresponded with the photograph. When the photograph had been taken, and whether or not it was taken from Vollkringer, did not appear. This line of testimony was objected to, but, it seems to me, without good reason. It was only another, and a more definite, method of proving the appearance of the man Vollkringer, and of the man who called himself Flamant. The resemblance of feature could surely be proved, to show that the man Vollkringer and the man called Flamant were the same person. Such testimony would not, of course, be conclusive, but, in

my opinion, it was some evidence, pertinent to the inquiry then in hand.

There remains to be considered the question whether error was committed by the court in finding, upon the testimony submitted by the government, that probable cause for the prosecution had been shown, and in directing a verdict for the government in the absence of any testimony from the claimants. This action was taken by virtue of section 21 of the administrative act of 1890, which is as follows:

"In all suits or informations brought, where any seizure has been made pursuant to an act providing for or regulating the collection of duties on imports or tonnage, if the property is claimed by any person, the burden of proof shall lay upon such claimant, provided that probable cause is shown for such prosecution, to be judged of by the court."

The goods proceeded against consisted of a quantity of metal forks, spoons, watches, bracelets, unset stones, diamonds, sapphires, rubies, pearls, opals, gold brooches, hair pins, combs, amber cigarette holders, metal match safes, salt cellars, sleeve buttons, smelling bottles, gold rings, gold studs, empty jewel cases, 97 gold chains, 119 scarf pins, 20 pairs of diamond earrings, 27 ladies' gold watches, 20 gentlemen's gold watches, etc., and apparently are the stock, or part of the stock, of a retail jewelry store. Many of the articles have still on them the store tags. The articles are of foreign manufacture, and are dutiable goods. It was proved by direct evidence that a considerable part of this property, prior to March 29th, composed the stock of a man named Vollkringer, who then kept a small jewelry store in Paris. The tags were identified as in his handwriting, and his purchase of some of the articles is proved by the seller. On April 1, 1893, the police of Paris examined Vollkringer's store in Paris, and found it closed, and the stock gone. On the 15th day of April, Vollkringer arrived at the port of New York, in the steamship New York. He came as a passenger, under the assumed name of Flamant. In his baggage entry he signed the name "Flamant," and in it declared one trunk, one bag, and one box, as the personal baggage of himself and wife. He declared no dutiable goods, and he paid no duty. With him there came a woman, who passed as his wife, and who was dressed in a long overcloak, reaching from her neck to her boots. On landing from the steamship on the 15th day of April, 1893, Vollkringer and the woman went to the Atlantic Hotel, without waiting for their baggage. There a meeting took place between Vollkringer and Leroux, the claimant in this case. They acted like acquaintances. The woman without removing the long overcloak, as was noticed by the landlady, remained sitting in the dining room of the hotel for about three hours, while Vollkringer and Leroux went to the steamship. On their return, all went upstairs together. Vollkringer and the woman remained at the hotel until about the 1st of May, when they left, having tickets for Canada; Vollkringer, in the mean time, having shaved off his mustache. A few days after this, Leroux and his wife left the hotel, and on the 5th day of May, the wife was found in Brooklyn, pawning jewelry at

several places, one after another, under the name of Jennie Dolle. She was arrested, and, at the lodgings occupied by her and Leroux, was found most of the jewelry in question. The rest was found at the pawnbrokers', where it had been pawned by the woman.

A considerable part of this property, as has been already stated, was subsequently identified, by a witness from Paris, as having belonged to Vollkringer in Paris, and as forming part of the stock in his store in Paris, and, in the course of the trial, it was proved, without objection, that Leroux said he got the diamonds from Flamant. A large part of this jewelry, when found, was sewed up inside flannel bags, which bags, seven in number, were evidently constructed to be worn on the person, by means of tapes attached, under the arms, about the waist, around the stomach, and around the legs. The goods, the claimants say, in their answer, they had bought in New York; from whom is not stated.

There is hardly room to contend that this evidence fails to show circumstances sufficient to warrant a suspicion that the goods had been brought by Vollkringer into the United States, without entry or payment of duty.

The statute on which the action of the court was based is a reproduction of the old statute of 1789, and it cannot be doubted that the statute supports the ruling made at the trial, if it is to be understood as the similar statute has been interpreted by the supreme court of the United States in many cases,—of which it is sufficient to refer to the case of Averill v. Smith, 17 Wall. 83, where a certificate of probable cause was upheld, although the evidence was not sufficient to justify a condemnation of the property, and where the court cites with approval the remark of Mr. Parsons that the words "probable cause" mean less than evidence that would justify condemnation, and says, "It is settled that the words 'probable cause' import circumstances which create suspicion." This, as was said by the supreme court in Cliquot's Champagne, 3 Wall. 145, "has always been regarded as a prominent feature of the revenue system of this country."

But it is said that recent decisions of the supreme court have changed the law, and that it must now be held that, to show probable cause, within the meaning of the statute, the evidence must be such as to establish the charge beyond a reasonable doubt; and it is contended that, if the statute be interpreted as stated in Averill v. Smith, it renders the provision unconstitutional, as being in violation of the fifth amendment of the constitution. In support of this contention reference is made to the decision of the supreme court in the cases of Lilienthal v. U. S., 97 U. S. 237; Chaffee v. U. S., 18 Wall. 516; and especially the case of Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524. The argument based upon these cases is this: The case at bar is not a civil suit, but is a criminal proceeding, and, as such, governed by the rules of the criminal law. A rule of criminal law is that no verdict can be given for the government unless the charge is proved beyond a reasonable doubt, and of that the jury, and not the court, must judge; therefore, no judgment can be given here, because the court decided that the evi-

dence cast the burden of proof upon the claimants, whereas the evidence did not prove the charge beyond a reasonable doubt, and, when no evidence was offered for the claimants, the court directed the jury as to their verdict. It may well be that error was here committed, if the decision in Boyd's Case is to be given the effect claimed for it here; but, if such a sweeping effect is to be given to the decision in Boyd's Case as has been claimed, I prefer to leave it to the appellate court to do it. I say sweeping, because I have heard it argued that the decision in Boyd's Case renders it unlawful, in a criminal trial upon an indictment charging the prisoner with knowingly passing a counterfeit dollar, to put in evidence, on the question of guilty knowledge, numerous similar counterfeit dollars which the accused had in his pocket at the time he passed the coin in question, and which, upon a search of his person, made without his consent, were there found by the officer, and taken from him without his consent. Besides, it can, I think, be fairly said that the decision in Boyd's Case is not binding authority in this case. Boyd's Case, as the court says, was a case of forfeiting a man's property by reason of offenses committed by him. This is not such a case. It is not contended that the goods in question had been smuggled by Leroux or his wife, who have claimed the property as owners. Any such proposition was expressly disclaimed by the district attorney at the trial, and the case was limited to the question whether the goods had been smuggled by Vollkringer. But Vollkringer, as the claimants say, in their answer, had parted with his interest in the goods in the city of New York, and after the right of the United States to the goods had attached by reason of his unlawful acts. No punishment of Vollkringer is or can be inflicted by this proceeding. Indeed, no action of Vollkringer amounting to a felony is asserted. This case, therefore, cannot be a criminal prosecution of Vollkringer, under the cloak of a civil suit against jewelry. The question whether, in a case like this, such action as was taken by the court on the failure of the claimants to produce any evidence is unlawful, is not decided in Boyd's Case. In my opinion, this case must be governed by the anterior law as declared by the supreme court of the United States in the cases, and by the decision in Boyd's Case, to which I have referred.

Upon these grounds the motion for a new trial, and for arrest of judgment, must be denied.