## FEATHERS OF WILD BIRDS (ARBIB, Claimant) v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. May 26, 1920.)

No. 162.

1. **Customs duties** ⟐➾130—**Prohibited article "imported" and knowingly brought in, subject to forfeiture.**
    Under Rev. St. § 3082 (Comp. St. § 5785), providing for forfeiture of merchandise fraudulently or knowingly imported contrary to law, articles prohibited from importation, if actually brought into the county, are "imported," and, if knowingly brought in, are subject to forfeiture.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Import.]

2. **Customs duties** ⟐➾130—**Evidence warranting forfeiture of prohibited articles.**
    The finding of feathers of a kind the importation of which is prohibited in the possession of claimant, in the absence of a consistent explanation, held probable cause, and to sustain a judgment of forfeiture, under Rev. St. § 3082 (Comp. St. § 5785), and Tariff Act, § 3, par. T (Comp. St. § 5791).

3. **Customs duties** ⟐➾130—**Suit for forfeiture, ground for suspicion is "probable cause."**
    In Tariff Act, § 3, par. T (Comp. St. § 5791), providing that in suits for forfeiture the burden of proof shall be on the claimant, "provided that probable cause is shown for such prosecution to be judged of by the court," "probable cause" means no more than present circumstances creating suspicion.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Probable Cause.]

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the United States against nine cartons and eight cartons of Feathers of Wild Birds; Rene Arbib, claimant. Decree for libelant, and claimant appeals. Affirmed.

⟐➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Libel filed for forfeiture of certain cartons containing feathers of birds of paradise and ghoura pigeons. Decree for libelant. Claimant appeals.

Seabury, Massey & Lowe, of New York City (Albert Massey and L. Hamilton Rainey, both of New York City, of counsel), for appellant.

Francis G. Caffey, U. S. Atty., of New York City (Harold Harper, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. After seizure of two lots of feathers of foreign birds, a libel of information for the forfeiture of them was filed by the government under section 3082, United States Revised Statutes (Comp. St. § 5785), and Schedule N, par. 347, and paragraph T of section 3 of the Tariff Act of October 3, 1913, c. 16 (Comp. St. § 5791). The libel consists of two counts. The first count charges that the merchandise in question, which had been seized, was prohibited to be imported by paragraph 347 of the Tariff Act of October 3, 1913, and that it was so imported knowingly and fraudulently between October 3, 1913, the date of the passage of the act, and December 4, 1917, and therefore was imported contrary to law, within section 3082 of the Revised Statutes, which provides for the forfeiture of merchandise in such case.

The second cause of action alleged that the claimant, doing business under the name of Diana Feather Company, knowingly and fraudulently received and sold the merchandise, knowing it to have been imported contrary to law at the time and between the dates above mentioned. As the trial proceeded, the second count was withdrawn from the consideration of the jury, pursuant to the court's charge, upon the ground that there was no evidence to support it. The decree therefore rests upon the allegations of the first count.

[1] The sections of the statutes referred to are as follows:

"Sec. 3082. If any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise, contrary to law, or shall receive, conceal, buy, sell or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported, contrary to law, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding five thousand dollars nor less than fifty dollars, or be imprisoned for any time not exceeding two years, or both. Whenever, on trial for a violation of this section, the defendant is shown to have or to have had possession of such goods, such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury."

Paragraph 347: "Provided, that the importation of aigrettes, egret plumes or so-called osprey plumes, and the feathers, quills, heads, wings, tails, skins, or parts of skins, of wild birds, either raw or manufactured and not for scientific or educational purposes is hereby prohibited; but this provision shall not apply to the feathers or plumes of ostriches, or to the feathers or plumes of domestic fowls of any kind."

Subdivision. T. § III: "That in all suits or informations brought, where any seizure has been made pursuant to any act providing for or regulating the collection of duties on imports or tonnage, if the property is claimed by any person, the burden of proof shall be upon such claimant, and in all actions or

proceedings for the recovery of the value of merchandise imported contrary to any act providing for or regulating the collection of duties on imports or tonnage, the burden of proof shall be upon the defendant: Provided, that probable cause is shown for such prosecution, to be judged of by the court."

[2] Since it is admitted that the feathers were from birds not found in the United States and there is no contention that they were brought into this country after October 3, 1913, for scientific or educational purposes, it must be concluded that they were unlawfully in this country. The evidence offered in behalf of the government consisted of circumstances surrounding the finding of the feathers in this country, the claimant's possession of them, and his inconsistent statements made to the customs agents of the Treasury Department as to his possession and ownership of the feathers. His testimony, given in resisting the libel, indicates sufficient to make out a case of probable cause and justifies the ruling of the district judge that probable cause existed. His several explanations were wholly inconsistent with each other as to how the feathers came into his possession.

[3] Probable cause as the term is used in paragraph T of section 3 of the Tariff Act of October 3, 1913, means no more than present circumstances creating suspicion. United States v. Certain Jewelry (D. C.) 59 Fed. 684. The evidence required the District Judge to submit the question of the presence of the feathers in this country as imported contrary to law, to the jury as a question of fact. Upon this writ of error, we cannot review the weight of evidence. The burden of proof was upon the claimant since paragraph T of section 3 above referred to, which is invoked in support of the libel, has application to this case. Section 3082 has been held to apply to goods imported. We sustained the conviction in the case of Ruehl v. United States (C. C. A.) 263 Fed. 376 (decided January 14, 1920), holding that section 3082 applied to the importation of goods in the United States lawfully, but imported by a person legally incapacitated because of his employment by the federal government from importing into the United States, even though his business otherwise was lawful. We also held there that section 3082, although not complete in itself (Keck v. United States, 172 U. S. 434, 19 Sup. Ct. 254, 43 L. Ed. 505), can only be completed by referring to some other statute operating on goods, and making their importation illegal, and not by referring to a statute that operates in personam only. We said:

"The only obligation on one filing libel for condemnation under section 3082 is to allege and prove that the act of importation was knowingly 'contrary to law,' on the part of 'any person' so importing."

In United States v. One Bag of Paradise Feathers, 256 Fed. 301, 167 C. C. A. 473, this court held that seized goods which were absolutely prohibited from importation at the time when they were brought into this country, were properly seized under section 3082 and section 3, paragraph T, of the Tariff Act. Importation we held to mean bringing into this country from foreign parts. Ruehl v. United States, supra.

In Goldman v. United States (C. C. A.) 263 Fed. 340, a conviction for knowingly receiving a coil of rope, which had been landed from a

foreign port without permit from the collector of internal revenue, was affirmed. There the court considered section 3082 of the Revised Statutes, and said:

"We think section 3082 was not intended to be limited to cases of smuggling in the sense of introducing dutiable merchandise without paying and with the intent to avoid paying the duty on it. The proper administration of the custom laws requires that it be given a wider scope. It is important, in order to enforce the collection of duties, to establish many regulations relating to the introduction of merchandise into the country, other than the ultimate one of requiring the payment of duties. These are auxiliary regulations and can only be enforced by the imposition of penalties and punishment for their infraction. It is necessary not only to establish them, but to make disobedience of them criminal. This Congress accomplished through the enactment of section 3082, the effect of which, as we construe it, is to punish criminally and by forfeiture the bringing into the United States of any merchandise, whether dutiable or nondutiable, contrary to law, and the receiving and buying of it knowing it to have been brought in contrary to law. 'Contrary to law' we construe to mean to be in violation of any regulation, relating to its introduction, established by law (other than section 3082 itself) and made punishable when disobeyed [citing cases]."

We think that, where goods forbidden of importation are physically brought into the country as such prohibited articles, they are in fact imported within the meaning of the act just as truly as there may be an importation of lawful goods which may be imported contrary to law by failure to comply with the customs statute.

In United States v. One Ford Automobile (C. C. A.) 262 Fed. 374, an automobile used for importing distilled spirits, which were brought in contrary to law, was seized. We held that the automobile could not be lawfully seized from its owner, which was used in importing liquors which are by law prohibited from importation. There we said:

"We find that, upon examination of the act of August 10, 1917, there is made a new offense to import distilled liquors as the defendants named in the indictment did import them, and prescribed a punishment by fine or imprisonment, or both. Thus the statute is complete, and it makes no reference to any other statute which would give rise to a right of action for forfeiture of the vehicle of transportation, and we cannot add to the punishment already inflicted upon Tourville the forfeiture of his automobile."

Nowhere is the phrase "contrary to law" defined in the statute. We must therefore look to other statutes to ascertain this. We think that, although section 3082 is not complete, it can be and is completed in this instance by the provision of paragraph 347 of the Tariff Act which makes such importation absolutely prohibitive after the date of probation. The feathers in question, which were imported, were therefore imported contrary to law, as that phrase is used in section 3082. We think the Tariff Act permitted this seizure.

Decree affirmed.