## UNITED STATES v. 394 CASES OF LAWSON SCOTCH WHISKY.

District Court, D. Massachusetts. October 5, 1927.

### No. 3682.

Customs duties ⚖133(11)—Facts held to establish reasonable cause for filing information for forfeiture of smuggled goods (Tariff Act [19 USCA §§ 497, 525]).

Knowledge by customs officers that liquor in cases marked with the names of foreign manufacturers, in possession of claimant, had been acquired by him since importation of liquor had been prohibited by law, *held* to constitute reasonable cause for filing information for its forfeiture as unlawfully imported under Tariff Act Sept. 21, 1922, § 593 (b), being 19 USCA § 497, and to cast the burden of proof on claimant, under section 615 (19 USCA § 525).

Proceeding by the United States to forfeit 394 cases of Lawson Scotch whisky, etc. Decree of forfeiture.

Clifford H. Byrnes, Asst. U. S. Atty., of Boston, Mass., for the United States.

Jasper N. Johnson, of Boston, Mass., for claimant.

BREWSTER, District Judge. This is a proceeding to forfeit a quantity of liquors under section 593 (b) of the Tariff Act of September 21, 1922 (42 Stat. 982, c. 356 [19 USCA § 497]). The information reads:

"That on or about the 15th day of June, A. D. 1923, at a point on the coast of Massachusetts, a more particular description of which is to your informant unknown, said merchandise was unlawfully, knowingly, and

·clandestinely imported and brought into the United States without payment of the lawful customs duties due the United States on said merchandise, and without a permit for the importation thereof issued by the Commissioner of Internal Revenue of the United States, and that by virtue of said clandestine importation of said merchandise said United States was defrauded of customs revenue due to be paid on said merchandise."

The liquors involved were 394 cases of Lawson Scotch whisky, 11 cases of Peter Dawson Scotch whisky, and 42 cases of John De Kuyper gin. This liquor was seized by internal revenue agents on August 21, 1926, in a combination dwelling house and garage of one Nick Pappas, who has appeared specially and answered to the information and laid claim to the liquor.

The claimant assails the validity of the seizure on several grounds, among them being the alleged insufficiency of the search warrant. The warrant has already been upheld and the seizure upon it declared lawful in an earlier proceeding brought by Pappas against Lufkin, collector of customs, for a return of the liquor. (D. C.) 17 F.(2d) 988.

The government invokes the provisions of section 615 of the said Tariff Act (19 USCA § 525) relating to the burden of proof. This section reads as follows:

"In all suits or actions brought for the forfeiture of any vessel, vehicle, merchandise, or baggage seized under the provisions of any law relating to the collection of duties on imports or tonnage, where the property is claimed by any person, the burden of proof shall lie upon such claimant; and in all suits or actions brought for the recovery of the value of any vessel, vehicle, merchandise, or baggage seized for violation of any such law, the burden of proof shall be upon the defendant: Provided, that probable cause shall be first shown for the institution of such suit or action, to be judged of by the court."

The only question in these proceedings not already disposed of is whether there was probable cause shown for the institution of the information, so as to shift the burden of proof upon the claimant. Bearing upon this question the following facts may be found from the evidence:

On the 9th day of June, 1923, Pappas had upon his premises a quantity of liquor considerably in excess of, but including, that involved in these proceedings. Bottles of this liquor were contained in cases which bore upon them certain marks indicating the origin of the liquor. Thus, the cases of gin were marked "John De Kuyper gin," "Rotterdam,"

with the words "John De Kuyper & Son, Rotterdam." The cases containing the bottles of the Dawson Scotch whisky were marked: "Peter Dawson, Ltd., Dufftown Glasgow Old Scotch Whisky. Product of Scotland"—on one side of the case, and on the other side, "S. P. D. C. St. Pierre." The cases of Lawson Scotch whisky were marked, "Lawson Liquere Whisky, 12 bottles," and on the other side "Volquet, St. Pierre."

These cases were seized by the state police officer and taken to the police station in the town of Peabody. Subsequently the state proceedings were declared invalid and the liquor ordered returned to Pappas at 133 Andover street, where it was later seized by federal authorities.

Before it was returned, and while in the police station, federal revenue agents saw each of the cases, noted the markings thereon, and it appeared in evidence that the claimant had admitted to the state officials that he had had the liquor only a short time, and that he would have been rid of it in a few days, if his possession had not been disturbed. The government was, at the time of the institution of these proceedings, in possession of information that the liquor had been acquired by the claimant some three years after the importation of intoxicating liquors had been prohibited by the Constitution of the United States and by an act of Congress; that he had it in large quantities; that he had obtained it for unlawful purposes, and that the liquor bore all the earmarks of having originated outside of the United States. The government's expert testified that the analysis, smell, and taste of the liquor were all consistent with the belief of the government that the liquor was of foreign origin. The claimant offered evidence to the effect that very good imitations of Scotch whisky and of Holland gin were manufactured in this country and falsely labeled; the gin as the product of John De Kuyper & Son, Rotterdam, and the whisky as that of Peter Dawson, Limited; that the domestic manufacturers of this liquor went so far as to counterfeit the packages of these foreign producers and the markings thereon. Claimant produced an expert who testified that in his opinion it was impossible to tell from the analysis, taste, or smell whether the liquor was of foreign or domestic origin.

The most that can be said for the evidence offered by the claimant is that it weakens somewhat any inferences that one would naturally draw from the words appearing on the cases containing the bottles of liquor. I do not think that the revenue agents were re-

quired to assume that a case marked "Peter Dawson Scotch whisky" had been illegally manufactured in the United States and fraudulently labeled, in order to mislead the customer into the belief that he was buying imported Scotch whisky. Rather they were justified in taking notice of the somewhat notorious fact that since the effective date of the National Prohibition Act (27 USCA) there has been along the Massachusetts coast considerable activity among those engaged in unlawfully introducing into the United States imported liquor for distribution in the cities and towns lying along the sea coast. The Apollon, 9 Wheat. 362, 6 L. Ed. 111.

In my opinion, there was probable cause justifying the government in instituting the proceeding. Here there was more than ill-founded suspicion. There was a knowledge of facts which furnished a reasonable ground for the belief that the liquor was brought into the United States unlawfully and in violation of the revenue laws. This is sufficient to answer the requirements of the statute. Compare Carroll v. United States, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790; Stacey v. Emery, 97 U. S. 642, 24 L. Ed. 1035; Commonwealth v. Carey, 12 Cush. 246.

It is not necessary for the government to be in possession of facts which would have constituted a prima facie case of guilt. Locke v. United States, 7 Cranch, 339, 3 L. Ed. 336; The Thompson, 3 Wall. 155, 18 L. Ed. 55; United States v. 740 Tins of Opium (D. C.) 44 F. 798; Feathers of Wild Birds v. United States (C. C. A.) 267 F. 964; the Squanto (C. C. A.) 13 F.(2d) 548.

Probable cause, therefore, having been shown, section 615 of the Tariff Act required the claimant, in order to avoid forfeiture, to show by affirmative evidence that the liquor was not fraudulently or knowingly imported and brought into the United States in contravention of the tariff laws.

There was no evidence offered by the government definitely showing when, where, or how this liquor was brought into the United States.

The claimant did not take the stand, and he offered no evidence tending to show that the liquor had been lawfully imported and brought into the United States. Obviously he cannot expect to maintain his burden by showing that Scotch whisky and Holland gin can be, and probably are, manufactured in this country and put out as foreign products. If the inferences logically to be drawn from the appearance of the cases in which the bottles of liquor were contained are not the proper inferences, it was for the claimant to introduce evidence showing the true situation. If the liquor was a domestic liquor, or if he had no knowledge of the unlawful importation, he could very easily have furnished some evidence tending to establish those facts. His failure to do so cannot be wholly ignored. United States v. 740 Tins of Opium, supra. The legislative purpose manifest in section 615 is unmistakable, and I have no doubt respecting the power of Congress to impose on one found in possession of liquor, or other property subject to forfeiture, if illegally imported, the burden of proving that his possession is lawful, or that the property is not liable to forfeiture providing probable cause is first shown for the forfeiture proceedings. This burden the claimant has failed to maintain.

All of claimant's requests for rulings are denied.

A decree of forfeiture may be entered.