THE TAHOMA (ATLAS ENGINE CO. et al., Interveners).

No. 1778–KA.

First Division, Ketchikan.

Sept. 7, 1935.

Wm. A. Holzheimer, U. S. Atty., and Geo. W. Folta, Asst. U. S. Atty., both of Juneau, for the United States.

A. H. Ziegler, of Ketchikan, for respondent.

Lester Gore, of Ketchikan, for interveners.

ALEXANDER, District Judge.

This cause arises on a libel filed by the United States against the oil screw vessel Tahoma. The libel is in two counts. The first count charges that on or about May 29, 1933, at a foreign port, to wit, the Port of Prince Rupert, Province of British Columbia, Dominion of Canada, W. Pierce, the registered sole owner of said vessel unlawfully and fraudulently sold and transferred in whole or in part, by way of trust, confidence, and otherwise to a subject and citizen of a foreign state, to wit, F. E. Hunt, Limited, of the Dominion of Canada, said vessel Tahoma.

It is further alleged that on or about the 17th day of September, 1933, said vessel Tahoma cleared from Prince Rupert, Canada, for Alaska, and on the 18th day of September, 1933, arrived within a district of the United States, to wit, the customs collection district of Alaska, and remained in said district until about October 5, 1933, and that neither the master nor the person in charge of said vessel, within eight days after said vessel arrived in said district of the United States, or at any other time, surrendered or delivered up to the collector of customs for said district of Alaska the certificate of registry so procured as aforesaid by the said W. Pierce.

The second count alleges that from the time of the sale and transfer as aforesaid on or about May 29, 1933, and

continuously up to the time of her seizure as aforesaid, said vessel was unlawfully and fraudulently engaged in foreign trade, and said certificate of registry so granted and issued as aforesaid for said vessel was knowingly and fraudulently used for a vessel (the Tahoma) not entitled to the benefit thereof by reason of the sale and transfer of said vessel as aforesaid, that all and singular the matters aforesaid are contrary to the provisions of the laws of the United States regulating the sale, transfer, and operation of vessels under its registry, and that, by reason of the premises and by virtue of the laws of the United States, the said vessel Tahoma, her engine, tackle, apparel, cargo, etc., became forfeited.

Following the seizure of said vessel under said libel, the defendant, W. Pierce, filed a claim to said vessel as the owner thereof and moved that she be released under bond, which was subsequently done.

Thereafter libels of intervention were filed by the above-named interveners and an answer filed by claimant, and, after issues joined as to all the parties in interest, trial was had thereon.

It is undenied that on March 31, 1935, at the port of Ketchikan and within the collection district of Alaska, the oil screw vessel Tahoma was duly registered according to law and the official number 214,741 was assigned to her, and the certificate of registry issued entitling said vessel to engage in foreign trade, which certificate was in full force and effect and used by said vessel during all the times mentioned in the libel. It further appears that during all the time mentioned in the libel said vessel Tahoma was engaged in halibut fishing, plying between American waters and Prince Rupert, Canada, and sold its catches for shipment to American markets via Prince Rupert duty free.

It is contended by the government that on or about May 29, 1933, F. E. Hunt, Limited, a foreign corporation and citizen of Great Britain, took over the active control, management, and operation of the Tahoma and the shipment

of its catches of halibut to American markets, and applied the proceeds thereof in payment of the indebtedness of said vessel to said foreign corporation and to bills owed by said vessel to the interveners.

The evidence shows that by May, 1933, the Tahoma became so heavily indebted to F. E. Hunt, Limited, that said corporation made a deal with W. Pierce, the registered owner of the vessel, whereby said corporation turned over the American halibut schooner Wave to said claimant for his equity in the Tahoma and thereafter assumed the active management, control, and operation of the Tahoma and collected and disbursed the earnings of the Tahoma for the benefit of itself and the interveners. The agreement is set forth in Libelant's Exhibits 1 to 8. The libelant contends that this agreement constitutes a conspiracy to defraud the United States of its revenue and of the function, authority, and right to have vessels documented under the laws of the United States owned wholly by and in command of masters who are citizens of the United States. The libelant further claims that F. E. Hunt, Limited, G. W. Nickerson, W. Pierce, B. A. Petterson, John A. Johnson, Antone Martinsen, and the interveners became parties to this conspiracy, and that in pursuance thereof the claimant, Pierce, was forced to transfer his equity in the Tahoma to F. E. Hunt, Limited, for Petterson's equity in the Wave while Antone Martinsen, a foreigner, was placed in command of the Tahoma; the name of John A. Johnson, an American, 22 years old, being indorsed on the certificate of registry of the Tahoma as master. The libelant, however, contends that this appointment of Johnson was made for the sole purpose of facilitating the evasion of the shipping and customs laws of the United States and continuing the operation of the Tahoma under American registry to secure exemption from the payment of the duty of its catches, that Johnson was only master in name and for the purposes aforesaid, but had and exercised no authority over the operation of said vessel, but that the real master of said vessel was Martinsen, a British subject act-

ing by appointment of and under the orders of F. E. Hunt, Limited.

The claimant, Pierce, contends that such operation of the Tahoma was not inconsistent with his ownership thereof, that there was no transfer nor change of ownership, and that he consented to such a change in her operation for the benefit of the creditors and lienors of said vessel.

The libelant contends that the evidence, viewed in the light of all the attendant circumstances, shows such a change of ownership or transfer of interest in the Tahoma as to work a forfeiture of claimant's interest. It claims that F. E. Hunt, Limited, in effect coerced the interveners under threat of enforcing its superior lien (Libelant's Exhibit No. 4) to assent to the arrangement outlined for the removal of Pierce, the then record owner and master and claimant herein, from the Tahoma, and placing him on the Wave, giving him Petterson's equity in the Wave in exchange for claimant's equity in the Tahoma, and this appears to be borne out by the evidence. It is of no avail to say that there was no formal transfer, no recording with American customs officials of formal documents as pointed out by the claimant, for such documents could not be recorded unless such sale was first made known to, and authorized by, the United States Shipping Board and sale authorized in conformity with our law. On the other hand, it is quite apparent that the ownership status of the Tahoma and Wave did not remain as before the agreements, evidenced by Exhibits Nos. 1 to 8, inclusive, were put into effect. The question in this case is not whether there was a record transfer of the vessel in question, but rather whether there was such an actual or equitable transfer as to be subversive of our statutes. The object of the law is to give to American shipowners, and to them only, a preference by allowing fish, etc., caught by them to enter this country duty free, and of course at the same time to deny such preference to foreigners. That being the object, the law should be so interpreted as to effectuate its object, and, if any one other than an American citizen

profited through evasion of the customs by any arrangement, no matter what its character, by or through the catch of the Tahoma, it was a fraud on both the letter and spirit of the law. In the instant case, even the method of operation of the vessel was a fraud on the customs laws of the United States, and a studied effort at their evasion. F. E. Hunt, Limited, appointed an American master (on paper) who was not the actual master at all, but merely a puppet of their own, appointed because he was a citizen of the United States, in an effort to circumvent the law, and because the real master could not qualify as master under our law.

The F. E. Hunt Company, Limited, seeks to justify its conduct in taking over and operating the Tahoma under the guise of a creditor, rather than enforcing its rights as a creditor under Canadian laws, by contending that the Tahoma could have been libeled under the Canadian laws at Prince Rupert and sold and placed under Canadian registry, but the reason for not having done so is very apparent. To have done so would have entailed the initial outlay of 25 per cent. of her sale price as duty before she could be put under Canadian registry, and a 6 per cent. sales tax and loss of the exemption from the payment of a duty of 2 cents a pound on the halibut shipped to her principal market, viz. the United States. The desire to avoid these consequences furnished the motive to attempt to continue the operation of the Tahoma under her American registry and take their chances on being discovered in their operation.

In June, 1933, Captain Petterson, master of the Wave told the American consul at Prince Rupert (Tp. 49) that at the request of F. E. Hunt, Limited, he transferred his equity in the Wave to F. E. Hunt, Limited, in payment of the boat's indebtedness to that firm. G. W. Nickerson, the manager of F. E. Hunt, Limited, testified to the same effect (Tp. 97). He further said that F. E. Hunt, Limited, bought the Wave "in order to get a boat for W. Pierce

to operate." In F. E. Hunt's letter to the interveners on June 17, 1933 (Libelant's Exhibit No. 6) Nickerson says, "In connection with the boat we are transferring to Pierce there is some little work to be done on her and as soon as we get '*our*' *bills* we will send you a statement of just what the total indebtedness against the 'Tahoma' will be," which indicates pretty conclusively that F. E. Hunt, Limited, was not acting as Pierce's agent and flatly contradicts the testimony of Nickerson as to the capacity in which he acted. Nickerson further testified (Tp. 100) that, when the matter of the indebtedness of the Tahoma came up in the spring of 1933, "Hunt was going to take a bill of sale or get an equity in the 'Tahoma,'" and (Tp. 101) that Hunt decided they would take a blank bill of sale to the Tahoma, not for themselves, but that "it would have to be decided from a legal standpoint who could take the bill of sale." All of this goes to show what the real transaction was and that the principal concern of F. E. Hunt, Limited, was to cover its own tracks so effectually that, in case anything should happen, it would not be caught in its own trap.

█ █ The court finds that the evidence in this case is sufficient to warrant a finding of probable cause for the institution of the proceedings under both the first and second counts of the libel, and we so find. "Probable cause," as used in this connection, means no more than present circumstances creating suspicion. U. S. v. A Lot of Jewelry (D.C.) 59 F. 684, and Feathers of Wild Birds v. U. S. (C.C.A.) 267 F. 964–966. Having found that there was probable cause for the institution of the libel, the burden of proof is thereby cast on the claimant, but has not been sustained by him.

█ The explanations offered by the claimant and F. E. Hunt, Limited, of the taking over of the Tahoma are both unsatisfactory and unconvincing. It is admitted by claimant's answer that the Tahoma and her master in charge failed to surrender or deliver to the collector of

customs for the Alaska district the certificate of her registry within eight days after her arrival in Alaskan waters or at all.

I believe from the testimony in this case that there was such a transfer of the Tahoma as the law in question seeks to guard against. I was confirmed in that opinion by the actions and testimony on the stand of both Nickerson and the Hunt Company Manager, and of Pierce, the pseudo claimant, both of whom were halting, evasive, and generally unsatisfactory witnesses. Pierce did not seem to have any intelligent idea of what had transpired regarding his interest in the Tahoma or its transfer, and had little or no conception of what occurred after his transfer to the Wave, and admitted blandly that he knew little or nothing about the operations of the Tahoma after his transfer to the Wave nor what she made or to whom her earnings were disbursed, except that he knew that he did not participate in them, except by a possible application of them to his indebtedness, and no statement of that had ever been furnished to him, while Nickerson, though glib enough, was generally evasive on the vital points of his testimony. I am therefore forced to the conclusion that there has been an unlawful and fraudulent transfer of the Tahoma to F. E. Hunt, Limited, a British subject, in contravention of our law.

It follows that, if there was an unlawful or fraudulent transfer, as found, that the certificate of registry of the Tahoma was unlawfully and fraudulently used in a foreign trade by the Tahoma after she was no longer entitled to the benefits thereof by reason of the alleged transfer in violation of sections 60 and 808, title 46 U.S.C.A., because it is admitted that the Tahoma was engaged in halibut fishing and in the sale of her catch to American markets during the entire period of time up to the date of her seizure.

We therefore find that the allegations of the libel have been sustained, and judgment for forfeiture is hereby ordered.

Regarding the interveners, there is some evidence to the effect that they understood something of what was being done by the F. E. Hunt Company, but, in their eagerness to collect their claims, they were either ignorant or careless of the results of their own conduct. It appears, however, that their claims are based on work done and supplies furnished for the vessel long preceding any connection with F. E. Hunt, Limited, and long before any violation of the law took place, and it can hardly be said that they knowingly participated in the fraudulent transfer or operation of the vessel Tahoma by F. E. Hunt, Limited, and, as their liens are good maritime liens and accrued prior to the illegal acts complained of, their claims will be allowed in the principal sums prayed for, but, on account of their conduct, without costs or counsel fees to any of the interveners.

Findings and judgment may be prepared in accordance with this opinion.